UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT R. COSSEY, STACY N. COSSEY, TYLER COSSEY, and JOSHUA BAILEY,<br><br>Defendants. | Case No. 2:16-cv-00560-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

This matter comes before the Court on the parties' cross-motions for summary judgment. Dkts. 26, 27. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court enters summary judgment in favor of Plaintiff.

# II. BACKGROUND[1]

Plaintiff Metropolitan Property and Casualty Insurance Company ("Met P&C") is an insurance company organized and existing under the laws of Rhode Island with its principal place of business in Warwick, Rhode Island. At all relevant times, Met P&C was duly authorized to issue policies of insurance covering certain risks within the State of Idaho. Defendant Robert Cossey maintains a primary residence in Spokane County, Washington. At times material to this matter, Defendant Robert R. Cossey also maintained a second home in Priest River, Bonner County, Idaho. Defendant Stacy N. Cossey maintains a primary residence in Spokane County, Washington. At times material to this matter, Defendant Stacy N. Cossey also maintained a second home in Priest River, Bonner County, Idaho.[2] Defendant Tyler Cossey maintains a residence in Spokane County, Washington. Defendant Tyler Cossey is the son of Defendants Robert R. Cossey and Stacy N. Cossey. Defendant Joshua Bailey maintains a residence in Spokane County, Washington.

Robert and Stacy Cossey had in effect a policy of insurance, entitled Homeowner's Insurance Policy (hereinafter the "Policy"), issued by Met P&C with a policy term commencing November 09, 2015, and continuing until November 09, 2016, for a vacation home owned by Robert and Stacy Cossey located at Rte. 1, Box 51E, Priest

---

[1] The Court took the following facts from the Joint Statement of Undisputed Facts the parties submitted to the Court. Dkt. 25.
[2] At the time the Policy was issued, the Cosseys were married. The Cosseys have since divorced.

River, Idaho, 83856. The Policy provides coverage in the amount of $300,000.00 for bodily injury and property damage.

The Cosseys also owned a 2006 Sea Ray Model 195 Sport boat which was 20 feet in length and had a 190 horsepower motor (the "Boat"). At all times material to this matter, the Boat was moored at or near the vacation home. The Cosseys purchased a watercraft policy of insurance, issued by Safeco Insurance, with a policy term commencing January 18, 2016, and continuing until January 18, 2017, specifically covering the Boat (the "Boat Policy"). The Boat Policy provides coverage in the amount of $300,000.00 for bodily injury and property damage. In addition to the Boat Policy, the Cosseys purchased an umbrella policy of insurance covering their automobiles and watercraft (the Boat), also issued by Safeco Insurance, with a policy term commencing January 18, 2016, and continuing until January 18, 2017 (the "Umbrella Policy"). The Umbrella Policy provided coverage in the amount of $1,000,000.00.

Sometime prior to July 2, 2016, Tyler Cossey, with the permission of the Cosseys, invited several friends to the vacation home to celebrate the 4th of July weekend. Among the invitees were William "Riley" Devine, Joshua Bailey, Lauren Devine, Jeff Groat, and Lisa Groat. Tyler and some of his friends arrived at the vacation house on July 2, 2016. The Groat's arrived on July 3, 2016. Jeff Groat had recently purchased a Jet Ski that he brought with him to the vacation home.

On the afternoon of July 3, 2016, Tyler Cossey and his friends took the Boat and the Jet Ski out on the Pend Oreille River. With the permission of Tyler Cossey, Joshua Bailey was driving the Boat. Tyler Cossey, Abigail Lentz, and Danielle Grams were on

an inner tube being pulled by the Boat. Riley Devine was on the Jet Ski and was trying to jump the wake behind the Boat and the inner tube. At some point, he crashed into the inner tube, the Jet Ski striking Abigail Lentz in the face. Danielle Grams was also injured, having sustained a cracked rib and a partially collapsed lung. As a result of the above-described incident, Abigail Lentz underwent surgery, facial reconstruction with plates and wires in her mouth, and therapy.

On or about November 28, 2016, counsel for Abigail Lentz made a demand to Met P&C and its insureds, Robert and Stacy Cossey, as well as their son, Tyler Cossey, and the operator of the boat, Joshua Bailey, for payment of $1.7 million dollars, which exceeds the total amount of coverage under all of the insurance policies of the Cossey's, to settle Ms. Lentz's damage claims. On or about December 12, 2016, Met P&C sent a letter to the Cosseys denying coverage for liability arising out of the July 3, 2016, watercraft incident.

On December 30, 2016, Met P&C filed a Complaint in this Court asserting one claim for relief: a declaratory judgment proclaiming "that Met P&C owes no duty, contractual or otherwise, to" (1) "pay sums that the Defendants may become obligated to pay as damages for 'bodily injury' as a result of the allegations pled in or otherwise connected with the July 3, 2016 incident," or (2) "defend, or otherwise pay for the cost of defending, the Defendants in any matter involving the July 3, 2016 incident." Dkt. 1, at 6.

On May 4, 2017, the parties filed a Joint Statement of Undisputed Facts. Dkt. 25. Then, on June 7, 2017, the parties filed cross-motions for summary judgment. Dkts. 26,

27. After these motions were fully briefed, Magistrate Judge Ronald E. Bush reassigned this case to the undersigned. Dkt. 31.

## III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any material fact—a fact "that may affect the outcome of the case." *Id.* at 248.

When cross-motions for summary judgment are filed, the Court must independently search the record for factual disputes. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir.2001). The filing of cross-motions for summary judgment—where both parties essentially assert that there are no material factual disputes—does not vitiate the court's responsibility to determine whether disputes as to material facts are present. *Id.*

## IV. ANALYSIS

### A. The Applicable Law

The Idaho Supreme Court has instructed that, "[w]hen interpreting insurance policies" under Idaho law, courts should apply "the general rules of contract law subject

to certain special canons of construction." *Clark v. Prudential Prop. & Cas. Ins. Co.*, 66 P.3d 242, 244 (Idaho 2003). Under these general rules, the Court must determine whether or not there is an ambiguity in the policy, "[b]eginning with the plain language of the insurance policy." *Id.* "Determining whether a contract is ambiguous is a question of law upon which this Court exercises free review." *Id.* at 245. "Where the policy is reasonably subject to differing interpretations, the language is ambiguous and its meaning is a question of fact." *Id.* In resolving this question of law, the Court must construe the policy "as a whole, not by an isolated phrase." *Selkirk Seed Co. v. State Ins. Fund*, 18 P.3d 956, 959 (Idaho 2000). Generally, "because insurance contracts are adhesion contracts, typically not subject to negotiation between the parties, any ambiguity that exists in the contract 'must be construed most strongly against the insurer.'" *Farmers Ins. Co. of Idaho v. Talbot*, 987 P.2d 1043, 1047 (Idaho 1999) (quoting *Mut. of Enumclaw Ins. Co. v. Roberts*, 912 P.2d 119, 122 (Idaho 1996)). "The burden is on the insurer to use clear and precise language if it wishes to restrict the scope of coverage and exclusions not stated with specificity will not be presumed or inferred." *Clark*, 66 P.3d at 245.

"Under Idaho law and consistent with other states, an insurer's duties to defend and indemnify are separate duties." *Hoyle v. Utica Mut. Ins. Co.*, 48 P.3d 1256, 1264 (2002). "The duty to defend is broader than the duty to indemnify." *Id.* A "third-party's complaint [that] reveals a potential for liability that would be covered by the insured's policy" triggers the duty to defend. *Id.*

*B. Application*

The provision at issue in this case is paragraph nine of SECTION II – LOSSES WE DO NOT COVER of a larger section entitled, "LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES." Dkt. 25, at 34-36. Paragraph nine provides as follows:

> 9. **Watercraft. We** do not cover **bodily injury** or **property damage** arising out of:
>    A. the ownership, maintenance, occupancy, operation, use, loading or unloading of watercraft of any type owned or operated by or rented or loaned to **you**;
>    B. the entrustment by **you** of a watercraft of any type to any person;
>    C. the failure to supervise or negligent supervision by **you** of any person involving a watercraft of any type; or
>    D. vicarious liability, whether or not imposed by law, for the actions of a child or minor involving a watercraft of any type.
>
> Coverage is extended for **bodily injury** and **property damage** arising out of:
> a. any watercraft on the **insured premises**;
> b. any watercraft while stored;
> c. watercraft, owned or furnished or available for **your** regular use:
>    1) that is powered by one or more motors with 50 total horsepower or less. This includes watercraft propelled by a water jet pump engine or motor; or
>    2) that is a sailing vessel 31 feet and under in length with or without auxiliary power;
> d. rented watercraft:
>    1) powered by one or more outboard motors;
>    2) with an inboard or inboard-outdrive motor with 50 horsepower or less. This includes watercraft propelled by a water jet pump engine or motor; or
>    3) that is a sailing vessel 31 feet and under in length with or without auxiliary power; or
> e. watercraft not owned by **you**, not rented to **you** nor furnished or available for **your** regular use.
>
> This coverage is excess coverage over and above any other collectible insurance.

*Id.* at 36-37 (emphasis in original).

The parties assert that the definition of "you" and "your," provided for in the "GENERAL DEFINITIONS" section of the Policy, impacts the Court's interpretation. This definition provides:

> **"You"** and **"your"** mean:
> 1. the person or persons named in the Declarations and if a resident of the same household:
>    A. the spouse of such person or persons;
>    B. the relatives of either; or
>    C. any other person under the age of twenty-one in the care of any of the above; and
> 2. under **SECTION II** only:
>    A. any other person or organization legally responsible for loss caused by animals or watercraft owned by **you. We** will not cover any such person or organization using or having custody of animals or watercraft in any **business** or without **your** permission; and
>    B. with respect to the use of any vehicle, with **your** consent, to which this policy applies:
>       1. any person while engaged in employment by **you**; or
>       2. other persons using the vehicle on the **insured premises**.

*Id.* at 13-14.

Because paragraph nine falls under SECTION II, both the first and the second definition of "you" and "your" applies. This second definition has four requirements: (1) a person or organization; (2) legally responsible for loss; (3) caused by animals or watercraft owned by [the Cosseys]; (4) who had the permission of the Cosseys to use or have custody of the animals or watercraft.

The parties agree that Joshua Bailey was a permissive driver of the Boat— Joshua Bailey was driving the Boat with the permission of Tyler Cossey. The Court assumes,

MEMORANDUM DECISION AND ORDER– PAGE 8

without decided or commenting, for the purpose of these Motions that Bailey, as the driver of the Boat when the incident occurred, is "legally responsible for loss caused by" the Boat, which is a "watercraft owned by [the Cosseys]." Based on this assumption, Bailey falls under the definition of "you," applied to SECTION II, because (1) he is a person; (2) legally responsible for the loss; (3) cause by the Boat, a watercraft owned by the Cosseys, during the July 3, 2016 incident; and (4) he had the permission of the Cosseys to use the Boat when the loss occurred.

The Court now turns to paragraph nine with the conclusion that Bailey is included in the definition of "you" and "your." Paragraph nine first sets forth what is excluded from coverage. Significantly, this paragraph states that the Policy does "not cover bodily injury or property damage arising out of . . . [the] use . . . of watercraft of any type owned or operated by or rented or loaned to you; [or] the entrustment by you of a watercraft of any type to any person . . . ." Notwithstanding these exclusions, the Policy extends coverage "for bodily injury and property damage arising out of" certain uses of certain watercrafts.

Defendants assert that section "e." of paragraph nine extends coverage to bodily injury and property damages arising out of Joshua Bailey's use of the Boat during the July 3, 2016 incident. Section "e." extends coverage "for bodily injury and property damage arising out of . . . watercraft not owned by you, not rented to you nor furnished or available for your regular use." Defendants argue that, because Bailey is included in the definition of "you" for the purposes of this section, the Policy extends coverage to bodily

injury arising out of the Boat, because the Boat was not "owned by [Bailey]," "rented to [Bailey]," or "furnished or available for [Bailey's] regular use."

Met P&C argues only that "if Bailey is included within the defined term 'you' for purposes of the coverage 'extension' in subjection 'e.,' he must also necessarily be included within the defined term 'you' for purposes of the unambiguous exclusion under the Met P&C policy for operation, use, etc. of watercraft in section 9.A." Dkt. 27-1, at 7. In other words, Met P&C argues this section excludes coverage for "bodily injury or property damage arising out of . . . the . . . use . . . of watercraft of any type . . . operated by . . . [Bailey]." The Court agrees with this reading of the exclusion clause; however, the Court must construe this coverage exclusion narrowly and construe the coverage extension broadly. *See Farm Bureau Ins. Co. of Idaho v. Kinsey*, 234 P.3d 739, 743 (2010) ("Following the general tenets of insurance contract interpretation, these terms are given their broad meaning in cases involving the extension of liability coverage and are construed narrowly in those cases involving exclusion from coverage." 9A Steven Plitt, et al., Couch on Insurance § 128:6 (3d ed. 2009)). The Court must also read the Policy as a whole and give meaning to all of its terms. *See Twin Lakes Vill. Prop. Ass'n, Inc. v. Crowley*, 857 P.2d 611, 617 (1993). Following these canons of construction, the Court finds the exclusions from coverage in section "A." are subject to the extension of coverage in section "e."

Nevertheless, the Court finds it necessary to examine section "e." closer to determine whether it really extends coverage to the July 3, 2016 incident. Again, the definition of "you" in this section includes Bailey; however, it also includes the named

insured party—the Cosseys. Accordingly, section "e." extends coverage "for bodily injury and property damage arising out of . . . watercraft not owned by" anyone falling under the definition of "you," which includes Bailey and the Cosseys. Because the Boat is a watercraft owned by the Cosseys, section "e." does not extend coverage for injury or damage caused by the Boat.

In sum, section "A." of paragraph nine excludes from coverage bodily injury or property damage arising out of Bailey's use of watercraft of any type. Injury or damages arising from Bailey's operation of the Boat during the July 3, 2016 incident is thus excluded from coverage under this section. Section "e.," in turn, does not extend coverage to Bailey's operation of the Boat during this incident. Therefore, the Court must conclude that the Policy does not cover any damages for bodily injury arising from Bailey's operation of the Boat during the July 3, 2016 incident.

Because the Court finds the Policy unambiguously does not cover damages for bodily injury connected with the July 3, 2016 incident, the Court also finds Abigail Lentz's demand for payment did not trigger the duty to defend.

For all of these reasons, the Court finds there is no dispute of material fact in this case and Met P&C is entitled to judgment as a matter of law. Accordingly, the Court will enter summary judgment in favor of Met P&C.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment (Dkt. 27) is GRANTED.
2. Defendants' Motion for Summary Judgment (Dkt. 26) is DENIED.

3. The Court will enter a separate Judgment in accordance with Fed. R. Civ. P. 58.

DATED: October 17, 2017

_____
David C. Nye
U.S. District Court Judge